IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| CGBM 100, LLC and ACCUTRANS, INC. | § § § | |
| V. | § | CIVIL ACTION NO. G-15-026 |
| | § | |
| FLOWSERVE US, INC., FLOWSERVE CORPORATION and STERLING SHIPYARD, LP. | § § § § | |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment of Defendant Flowserve US, Inc. and Flowserve Corporation ("Flowserve") seeking summary judgment as all claims asserted against Flowserve by CGBM 100, LLC and Accutrans, Inc. (Plaintiffs). The Motion (Instrument no. 58) is **GRANTED IN PART AND DENIED IN PART**.

In June 2012 Plaintiffs entered into a barge transportation contract with CITGO. The contract required Plaintiffs to load barges with coker feed at the East CITGO Plant and transport it across the Corpus Christi inland waterway to the West CITGO Plant where the coker feed was to be unloaded. To perform the contract Plaintiffs entered into a contract with Sterling Shipyard for the construction of two barges, one capable of transporting 55,000 barrels of product and the other capable of transporting 35,000 barrels of product, for a cost of over 13 million dollars. The loading and unloading process

required the use of four pumps capable of pumping coker feed at the rate of 3500 gallons per minute (GPM). Each barge was to be fitted with two such pumps.

After discussions with Flowserve and other pump manufacturing companies regarding, *inter alia*, the required flow rate of the pumps, Plaintiffs accepted Flowserve's proposal to provide the pumps based upon Flowserve's assurances that it could simply redesign its standard NL-style pumps, with 2800 GPM capabilities, to achieve the necessary flow rate. Flowserve promised to test the pumps to assure they reached the proper flow rate before delivery. The cost of the four pumps was 1.33 million dollars. Plaintiffs directed Sterling to order the pumps for installation on its barges, however, Plaintiffs ultimately paid for them.

According to Plaintiffs, Flowserve did not redesign its NL-style pumps, it only made minor adjustments to them and instructed Plaintiffs to run the pumps at a higher than normal speed. Flowserve also failed to test the pumps' ability to perform at the required flow rate before delivering them to Sterling for installation on the barges.

In March 2014, when the already installed, but untested, pumps were put into service they failed to perform at the required flow rate and caused severe vibrations to the barges. For about four weeks Flowserve tested the pumps and tried to remedy the problems, but without success. Flowserve them blamed the problems on faulty installation and other excuses for which it was not responsible and ceased working on the pumps. As a result, Plaintiffs hired Genesis Marine to temporarily perform the CITGO contract and

Bayou City Pump to fix the Flowserve pumps.  Finally, in June 2015, after expenditures of about 2.5 million dollars to Genesis and Bayou, the pumps as redesigned by Bayou were able to perform as required.

On February 6, 2015, Plaintiffs sued Flowserve and Sterling for breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of good and workman like services, and attorney's fees.  Plaintiff further sued Flowserve for fraud, fraud in the inducement, fraud by omission, negligent misrepresentation and exemplary damages.

Breach of Contract Claim

Flowserve argues that, *inter alia*, Plaintiffs cannot assert a breach of contract claim because the pumps were ultimately accepted by them.  This Court agrees.  Under applicable Texas law, "damages are only permitted under a breach of contract cause of action when the seller has failed to deliver the goods (to the buyer), the buyer has rejected the goods, or the buyer has revoked his acceptance" within a reasonable time.  Luig v. North Bay Enterprises, 817 F.3d 901, 906 (5th Cir. 2016).   If a buyer retains and uses, alters, and/or changes the goods he will be found to have accepted them.  Bacchus Industries v. Frontier Mechanical Contractors, 36 S.W. 3d 579, 584 (Tex. App -- El Paso, 2000, no pet.).  In this case, Plaintiffs retained the pumps, had them redesigned by Bayou

3

and has since utilized them to perform the contract with CITGO. Therefore, Plaintiffs have no viable breach of contract claim against Flowserve and it must be dismissed.

Breach of Express Warranty

Flowserve argues that Plaintiffs have no breach of an express warranty claim because the contract for the sale and purchase of the pumps contained disclaimer and merger clauses. This Court disagrees.

The Court finds, as a matter of law, that Flowserve made an express warranty when it promised Plaintiffs it would make and deliver pumps that would provide the flow rate required by Plaintiffs to perform the CITGO contract. That promise was the primary basis of the bargain upon which Plaintiffs relied in authorizing the purchase of the pumps. Omni USA, Inc. v. Parker-Hannifin Corp., 964 F.Supp. 2d 805, 814 (S.D. Tex. 2013) (quoting, TEX. BUS. & COMM. CODE § 2.313); see also, Luig v. North Bay Enterprises, Inc., 55 F.Supp. 3d 942, 951 (N.D. Tex. 2014) ("the Texas courts treat the question of whether a promise constitutes an express warranty as a question of law.") The fact that Flowserve's promise may have been "outside the terms of the contract" is not dispositive because Texas courts assess the actual intent of the parties and the actual reliance upon an express warranty. Oakwood Mobile Homes, Inc. v. Cable, 73 S.W. 3d 363, 372 (Tex. App. -- El Paso 2002, pet. denied). Once an express warrant is found to exist, it can only be excluded or modified pursuant to Section 2.316(a), which requires that any exclusion or modification be reasonable and consistent with the warranty made. Id. at 952. The

4

warranty given by Flowserve described the capacities of the pumps and their suitability for the particular purpose required by Plaintiffs. The disclaimer upon which Flowserve relies would negate or limit that warranty and it, therefore, is inoperative as unreasonable. Likewise, the merger clause can offer Flowserve no escape since it cannot be seriously contended that Plaintiffs intended the written contract to be a complete and exclusive statement of the terms of the agreement. Mobile Housing, Inc. v. Stone, 490 S.W. 2d 611, 615 (Tex. Civ. App. -- Dallas 1973).

It is, therefore, **ORDERED** that Flowserve's Motion is **DENIED** as to this claim.

Breach of Implied Warranties

Plaintiffs have abandoned their claims for breach of an implied warranty of merchantability, breach of an implied warranty of fitness for a particular purpose and breach of an implied warranty for good and workmanlike services and those claims are, therefore, **DISMISSED**.

Fraud Claims

As the Court understands it, Plaintiffs are only asserting a fraudulent inducement claim based upon allegedly false promises and representations made by Flowserve to entice Plaintiffs to purchase Flowserve's modified pumps. Accepting Plaintiffs' evidence as true; drawing all inferences therefrom in Plaintiff's favor, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); and avoiding any temptation to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for Flowserve, Dibidale of

La., Inc. v. American Bank & Trust Co., 916 F.2d 300, 307-08 (5th Cir. 1990), the Court finds Plaintiffs could establish a submissible case.

In a nutshell, Flowserve knew Plaintiffs wanted pumps with the 3500 GPM flow rate and Flowserve falsely or recklessly promised it could redesign its pumps to achieve that rate. Flowserve assured Plaintiffs it would test the pumps to verify performance at the required flow rate, but never intended to do so, deciding, instead, to deliver the non-compliant pumps for installation on the barges. Plaintiffs reasonably relied upon those misrepresentations when it told Sterling to purchase the pumps. After the pumps were installed and finally tested they failed to perform as promised. As a result, Plaintiffs suffered damages including the costs of redesigning the pumps and providing a third-party to perform the contract.

Even Flowserve concedes that the Economic Loss Rule does not apply to a fraudulent inducement claim, Formosa Plastics Corp. v. Presidio Engineers and Contractors, 960 S.W. 2d 41 (Tex. 1998), so its argument the Plaintiffs fraud claims are all barred is without merit as to Plaintiff's fraudulent inducement claim.

Flowserve's argument that CITGO, not Plaintiffs, chose its pumps is disingenuous at best. CITGO may have recommended that Plaintiffs purchase Flowserve pumps to install on Plaintiffs' barges, but the flow rate discussions and promises arose in discussions between Flowserve and Plaintiffs. After all, it was Plaintiffs that told Sterling to buy the

pumps and who were responsible for competently performing the CITGO transportation contract.

Flowserve next argues that the merger clause in the "Flowserve Proposal No. 207032," supercedes its earlier promises and bars Plaintiffs' fraudulent inducement claim. Once again, this Court disagrees. It has long been the law in Texas that a written contract, even though it contains a merger clause, can be avoided for fraud in its inducement and that the Parol Evidence Rule does not stand in the way of proof of such fraud. <u>Dallas Farm Machinery Co. v. Reaves</u>, 158 Tex. 1, 307 S.W. 2d 233, 239 (1957). Public policy, in general, sanctions the avoidance of a promise obtained by deceit and will defeat attempts to circumvent that policy by means of contractual devices. <u>Id</u>. at 239. An exception to this policy was recognized in <u>Schlumberger Technology Corp. v. Swanson</u>, 959 S.W. 2d 171 (Tex. 1997), which held that when sophisticated parties negotiating at arms length and represented by counsel disclaim reliance on representations about a specific matter in dispute, such a disclaimer may be binding and negate the element of reliance in a suit for fraudulent inducement. But that exception is not dispositive in the case at bar. First, there is no evidence that Plaintiffs possessed the sophistication to determine that Flowserve was capable of redesigning its pumps to comply with their needs. Also, there is no evidence the parties were represented by competent counsel during the discussions between them. Finally, the Court must attempt to ascertain the true intentions of the parties as expressed in the writing. The merger clause does not express Plaintiffs' intent to disclaim ***reliance***

on Flowserve's representations and, instead, to rely upon their own judgment. Italian Cowboy Partners v. Prudential Insurance Co., 341 S.W. 3d 323, 335 (Tex. 2011). Moreover, there can be little doubt that Plaintiffs intended to rely upon Flowserve's promise that the pumps could do the job for which they were purchased and would not have agreed, in advance, to absolve Flowserve of any liability for its deceptions and the resultant damages Plaintiffs incurred.

The Court concludes that the jury will have to decide whether Flowserve intentionally or recklessly deceived Plaintiffs to induce them to purchase its pumps. Therefore, Flowserve's Motion is **DENIED** as to Plaintiffs' fraudulent inducement claim.

The other fraud claims appear to have been abandoned and they are, therefore, **DISMISSED**.

Negligent Misrepresentation

Plaintiffs have not responded to Flowserve's Motion for Summary Judgment regarding their negligent misrepresentation claim, therefore, the claim is **DISMISSED**.

Damages

Flowserve argues that Plaintiffs' potential damage recovery is limited by three contractual provisions: the disclaimer clause discussed and rejected above; a clause limiting Plaintiffs' remedies to repair or replacement of the pumps, at Flowserve's option; and a clause limiting damages to the price of the pumps and excluding any liability of

Flowserve for "special, consequential, incidental or penal damages." On the facts of this case, the Court finds those arguments unpersuasive.

After the pumps failed to adequately perform at the promised flow rate, Flowserve unsuccessfully attempted to repair the pumps for a month before demanding substantial sums of money from Plaintiffs to continue its repair efforts and abandoning any further work on the pumps when Plaintiffs refused to pay. Under these circumstances the jury could find that the limited remedy of repair or replacement failed in its essential purpose and failed to provide a fair quantum of remedy to Plaintiffs. TEX. BUS. & COMM. CODE § 2.719(b); see also, Mercedes-Benz of North America v. Dickenson, 720 S.W. 2d 844, 853-54 (Tex. App. -- Fort Worth 1986, no writ) (A remedy fails in its essential purpose when it operates to deprive a party of the substantial value of the bargain.). As a result, the exclusive repair or replace remedy is not enforceable.

In the opinion of this Court, the same would be true of the limitation-of-liability clause. The notion that Flowserve could refuse to perform as promised, thereby depriving Plaintiffs of the central element of the barge transportation system and causing Plaintiffs to expend in excess of 2 million dollars in additional funds to make the pumps work and to avoid breaching the CITGO contract, and then to limit its own liability to the original purchase price of the inadequate pumps must be rejected pursuant to Section 2.719(b). Enforcement of the clause would operate to deprive Plaintiffs of the substantial value of their bargain with Flowserve. E.F. Johnson Co. v. Infinity Global Technology, 2016 WL

4254496 *5 (Tex. App. -- Dallas, Aug. 11, 2016).[1]  Consequently, Plaintiffs may be entitled to recover their direct and incidental damages.

**DONE** at Galveston, Texas, this ____29th____ day of December, 2016.

_____
John R. Froeschner
United States Magistrate Judge

---

[1] The Court notes that the Texas Supreme Court granted an extension to file a Petition for Review on November 21, 2016.